**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATHANIEL TURNER,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-0491** |
| | : | |
| **DISTRICT ATTORNEY** | : | |
| **PHILADELPHIA COUNTY,** *et al.*, | : | |
| **Defendants** | : | |

**MEMORANDUM**

**PRATTER, J.**                                                    **MAY 17, 2022**

Plaintiff Nathaniel Turner, a prisoner currently incarcerated at SCI-Phoenix, filed this civil action pursuant to 42 U.S.C. § 1983. Named as defendants are the District Attorney of Philadelphia County and Managing Director of the Office of Forensic Science Michael Garvey.[1] The crux of Mr. Turner's claim is that his constitutional rights have been violated by Defendants' failure to produce evidence from his criminal trial; namely, black gloves, a property receipt and gun powder residue testing report related to the gloves, and "documents" establishing procedures for gun powder analysis and testing. For the following reasons, the Court will dismiss Mr. Turner's Complaint pursuant to 28 U.S.C. § 1915A(b)(1).

**I.    FACTUAL ALLEGATIONS[2]**

In 2003, a jury convicted Mr. Turner of robbery, aggravated assault, and criminal conspiracy. *Commonwealth v. Turner*, Nos. 285 EDA 2020 & 286 EDA 2020, 2021 WL

---

[1] The caption refers to Mr. Garvey as the Deputy Managing Director but the body of the Complaint refers to him as the Managing Director.

[2] The following facts are taken from the allegations of the Complaint, attached exhibits, and the public record.

1

3056286 (Pa. Super. Ct. July 20, 2021). The public record provides the following background to

Mr. Turner's convictions, which puts his current claims in context:

> On [the] evening of February 15, 2003, at 2132 Ridge Avenue, located in the City and County of Philadelphia, Pennsylvania, Marie Poteat (hereinafter Ms. Poteat) and Warnell Gamble (hereinafter Mr. Gamble) were locking up the store where Ms. Poteat was employed. (N.T. 8-5-03, p.46, lines 15-25 and p. 152, lines 1-7). Nathaniel Turner (hereinafter appellant), and his co-defendant Arnold Haire (hereinafter Haire), who had a gun in his hand, rushed into the store. (N.T. 8-5-03, p.49, lines 11-25 and p 155, lines 20-25). Although, appellant knocked Ms. Poteat inside the store, she was able to make her way through the door to the outside. (N.T. 8-5-03, p.50, lines 19-25). As Ms. Poteat passed appellant he snatched her Louis Vuitton handbag that contained money, envelopes, and other personal items. (N.T. 8-5-03, p.51, lines 8-25 and p.52, lines 7-17). Appellant had a hard cast on his arm which he used to hit Ms. Poteat in the back knocking her to the ground. (N.T. 8-5-03, p.52, lines 20-25). At the same time, Mr. Gamble and Haire were struggling over the gun. Haire shot Mr. Gamble once in the stomach. (N T. 8-5-03, p.160, lines 16-18). Tracy Pittman, observed the appellant and Haire running from the crime scene. (N T. 8-5-03, p. 120, lines 21-25). Later that evening, both men were detained by the police and positively identified by both Ms. Poteat and Ms. Pittman. (N.T. 8-5-03, p.59, lines 3-9, p.142, lines 18-25, and p.143, lines 1-7). Mr Gamble was hospitalized as a result of the gunshot wound but subsequently identified Haire as the person who shot him. (N.T 8-5-03, p. 167, lines 10-25 and p. 168, lines 1-23). Both men were charged with Robbery, Aggravated Assault, and Criminal Conspiracy.

*Commonwealth v. Turner*, No. 1340-111/2, 2004 WL 5541015 (C.C.P. Phila. Apr. 19, 2004).

During Mr. Turner's criminal trial, the Commonwealth presented evidence from a gunshot

residue analysis expert, Ronald McCoy. *Turner v. Barone*, Civ. No. 09-0955, ECF No. 24-2 at

79-88. [3]   Mr. Turner's counsel cross-examined Mr. McCoy after stipulating to his expert

---

[3] The Court adopts the pagination supplied by the CM/ECF docketing system for the relevant notes of testimony. The Commonwealth submitted the notes of testimony ("N.T") from Mr. Turner's criminal trial as an exhibit to its response to Mr. Turner's petition for a writ of habeas corpus. *See Turner,* Civ. No. 09-0955, ECF No. 24-2.

credentials. (*Id.* at 87.) Mr. McCoy testified that the gloves recovered from Mr. Haire, Mr. Turner's co-defendant, tested positive for gunshot residue. (*Id.* at 81-84.) A gunshot residue report (Lab No. 03-30126) and a property receipt for the gloves recovered from Mr. Haire (Property Receipt No. 2435957) were admitted into evidence by the Commonwealth and criminal defense counsel, respectively. (*Id.* at 67, 70, 72, 81, 84, 88, 91, 96.)

Mr. Turner's judgment of sentence was affirmed in state court and his multiple attempts to obtain post-conviction relief were unsuccessful. *See Commonwealth v. Turner*, 872 A.2d 1276 (Pa. Super. Ct. 2005); *Turner*, 2021 WL 3056286. Mr. Turner also unsuccessfully sought *habeas* relief in this court. *See Turner*, Civ. No. 09-0955, 2010 WL 785234 (E.D. Pa. Feb. 24, 2010). In objections to a Magistrate Judge's report and recommendation, Mr. Turner challenged for the first time the accuracy of the gunshot residue analysis; the Honorable Mary McLaughlin found these claims to be procedurally defaulted because Mr. Turner did not raise them in any of his state court proceedings or in his original habeas petition. *Id.* at *3 (E.D. Pa. Feb. 24, 2010). Most recently, on July 20, 2021, the Pennsylvania Superior Court affirmed the denial of Mr. Turner's fourth post-conviction motion in which Mr. Turner claimed that the trial court's jury instruction defining reasonable doubt violated his Fourteenth Amendment right to due process. *Turner*, 2021 WL 3056286, at *1-5.

Mr. Turner alleges that he became aware of a 2018 case issued by the Pennsylvania Supreme Court, which led him to believe he could challenge the gun powder residue evidence in his case — specifically Mr. McCoy's report about the gun shot residue on the black glove — on the basis that "primer lead" alone is not gun powder residue.[4] (Compl. at 13.) He also alleges

---

[4] Mr. Turner's reliance on *In Interest J.B.*, 647 Pa. 339, 391, 189 A.3d 390, 422 (2018) appears misplaced. In that case, the court vacated a juvenile's adjudication of delinquency for murder, finding evidence that he was at the murder scene just prior to the killing and that there

3

that the Commonwealth never produced the gun shot residue or lead test reports during trial and, instead, only provided a property receipt. (*Id.*) Mr. Turner also claims that Mr. McCoy testified falsely at trial that he had reviewed the report, which Mr. McCoy testified was prepared by another individual. (*Id.* at 14.)

In 2019, in connection with his focus on the validity of the gun shot residue report entered into evidence at trial, Mr. Turner wrote letters to the Philadelphia Court of Common Pleas and Philadelphia Police Department Trace Laboratory in which he sought access to or information about the testing results and a related property receipt that had been entered into evidence. (*Id.* at 15.) Those requests were denied. (*Id.*) He hired a private investigator, but the investigation was stalled during the COVID-19 pandemic. (*Id.*) On August 16, 2021, Mr. Turner sent another request to the Philadelphia Police Trace Laboratory seeking test results related to the gun shot residue report. (*Id.*) He made a similar request to the District Attorney's Office. (*Id.* at 16.) He alleges that Defendants did not produce the requested items and, instead, either ignored or denied his requests. (*Id.* at 5-6, 16.) Mr. Turner asserts that he needs access to this evidence "to see what was actually needed to be tested on the gloves said to be the source of that test" so he can establish his innocence. (*Id.*) According to the Complaint, Mr. Turner began his extrajudicial efforts to obtain access to this evidence after filing unsuccessful petitions for post-conviction relief in state court, which he claims "were denied a merits review due to lack of jurisdiction." (*Id.* at 16.)

---

were no signs of forced entry did not "yield the sole reasonable inference that J.B. was the murderer." *Id.* at 420. The issue of gunshot residue was, at most, tangential to that decision. *See id.* at 419-20.

Mr. Turner claims Defendants' refusal to produce the material "deprives him of access to available evidence to litigate his claims in state court and such denial prevents him from having access to the court to pursue post-conviction remedies." (*Id.* at 13.) He further alleges the refusal to provide the requested evidence "deprived [him] of his liberty interest and constitutional right to litigate his innocence" under Pennsylvania's Post Conviction Relief Act. (*Id.* at 19.) Mr. Turner now seeks an injunction directing Defendants to provide access to the requested evidence, which he claims is necessary to pursue state court post-conviction remedies. (*Id.* at 13). Specifically, Mr. Turner requests an order directing Defendants to provide: (1) Lead Rhodizonate Test Report identified as "C-8" Lab Report No. 03-30126; (2) Gun Shot Residue Report Property Receipt No. 2435957; (3) all documents establishing procedures for gun residue testing and analysis; and (4) "the black gloves as the source of the gun shot residue analysis so that Plaintiff can hire his own forensic scientist for testing and analysis." (*Id.* at 18.)

## II.   STANDARD OF REVIEW

Although Mr. Turner has paid the filing fee and administrative fee in full, the Court is required to review his Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauve*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted,"

5

*id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at \*1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Because Mr. Turner is proceeding *pro se*, the Court will construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

Mr. Turner claims that Defendants' failure to provide him with the requested evidence violates his First Amendment and due process rights. Mr. Turner clearly states in his Complaint that he does not intend to challenge his conviction in the instant lawsuit. (Compl. at 13.) Rather, he asserts that he only seeks access to the evidence in question. (*Id.* at 13, 18.) Specifically, he seeks an injunction directing the DA's Office and Philadelphia Police Department Forensic Lab to produce gunshot test results, gloves and procedures related to gunshot residue analysis, which he at times describes as "exculpatory," for use in his post-conviction proceedings. (*Id.* at 18.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). However, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a

6

conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has

been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal court's issuance of a

writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation

omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983

action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable

relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal

prison proceedings) — if success in that action would necessarily demonstrate the invalidity of

confinement or its duration." (emphasis omitted)). To the contrary, claims seeking post-

conviction access to evidence "which may prove exculpatory, inculpatory, or inconclusive" are

not barred by this principle because success on the prisoner's claim does not necessary imply the

invalidity of an intact conviction. *Skinner v. Switzer*, 562 U.S. 521, 525 (2011).

Here, Mr. Turner asserts that his claims are not barred by *Heck* because he does not

challenge his conviction. (Compl. at 13.) However, the substance of his claims appears to rely

in some part on an allegation that he is entitled to the evidence he seeks because it is

"exculpatory" evidence that was not disclosed to him, but should have been, under *Brady v.

Maryland*, 373 U.S.C. 83 (1963). "Unlike [postconviction] testing [of evidence], which may

yield exculpatory, incriminating, or inconclusive results, a *Brady* claim, when successful

postconviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by

definition, always favorable to the defendant and material to his guilt or punishment." *Skinner*,

562 U.S. at 536 ("*Brady* claims have ranked within the traditional core of habeas corpus and

outside the province of § 1983."). Accordingly, to the extent Mr. Turner is alleging a right to

exculpatory evidence, his claims are barred by *Heck*.

Regardless, some of Mr. Turner's allegations simply seek access to evidence for purposes of testing. These claims, which the Court construes as having been raised under the Due Process Clause and First Amendment, would not be barred by *Heck*. The United States Supreme Court's decision in *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009), governs these claims.

In *Osborne*, the Supreme Court held that the federal constitution does not provide a broad, freestanding right to access DNA evidence in the post-conviction setting, thus concluding that there is no such substantive due process right. *Id.* at 72; *accord Skinner,* 562 U.S. at 525 ("*Osborne* rejected the extension of substantive due process to this area and left slim room for the prisoner [seeking access to DNA testing] to show that the governing state law denies him procedural due process.") (internal citations omitted); *Grier v. Klem*, 591 F.3d 672, 678 (3d Cir. 2010) (relying upon *Osborne* and acknowledging that plaintiff had no substantive due process right to access DNA evidence). Accordingly, to the extent Mr. Turner's claim could be interpreted as a violation of substantive due process due to his inability to access evidence for testing in a post-conviction setting, his claim is not plausible and must be dismissed.

As to Mr. Turner's procedural due process claim, the *Osborne* Court recognized that a prisoner retains a liberty interest in demonstrating his innocence with new evidence under state law:

> A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man. At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt. But once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears. Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.
>
> The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. When a State chooses to offer help

to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume. Osborne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief. *Brady* is the wrong framework.

Instead, the question is whether consideration of Osborne's claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation. Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided.

*Id.* at 68-69 (internal quotations and citations omitted). The Court saw "nothing inadequate" about postconviction procedures that limited release upon a showing of new evidence establishing innocence to circumstances in which the evidence was diligently pursued and sufficiently material. *Id* at 70. The *Osborne* Court also made clear that it is the plaintiff's burden to demonstrate the inadequacy of the state-law procedures available to him in the context of state post-conviction relief. *Id.* at 71.

The United States Court of Appeals for the Third Circuit, in discussing *Osborne*, has observed that "procedural due process does not *require* that a district attorney disclose all potentially exculpatory evidence for postconviction relief to a prisoner." *Grier*, 591 F.3d at 678. Consistent with *Osborne*, "only when those procedures are determined fundamentally unfair or constitutionally inadequate will a federal action under § 1983 lie." *Id.* at 679. The question is whether the prisoner's "procedural due process rights, when considered within the framework of Pennsylvania's procedures for postconviction relief, were violated." *Id.* at 679.

Mr. Turner has failed to present a plausible claim that the Defendants have violated his due process rights under this rubric. Although he vaguely suggests that he sought evidence in an underlying PCRA proceeding, Mr. Turner provides no specific facts from which the Court could conclude that Pennsylvania's post-conviction relief procedures are fundamentally unfair or

9

inadequate. *See Young v. Philadelphia Cty. Dist. Attorney's Office*, 341 F. App'x 843, 845 (3d

Cir. 2009) ("In order for Pennsylvania's procedures to violate due process, they must offend, at

minimum, some principle of justice so rooted in the traditions and conscience of our people to be

ranked as fundamental, or they must transgress a recognized principle of fundamental fairness in

operation.  We conclude that Pennsylvania's procedures for post-conviction relief do neither."

(internal quotations and citations omitted)); *Wagner v. Dist. Att'y Allegheny Cty. Pa.*, No. 11-

762, 2021 WL 2090093, at \*10 (W.D. Pa. May 21, 2012) ("Wagner fails to make the difficult

showing that the Pennsylvania DNA testing procedures as discussed above are facially invalid as

they contain similar requirements and limitations imposed by other DNA-testing statutes,

including the post-conviction statute upheld in *Osborne*."), *report and recommendation adopted*,

2012 WL 2089799 (W.D. Pa. June 8, 2012).  As such, Mr. Turner has not alleged a plausible

basis for a procedural due process claim.[5] *See Spuck v. Pennsylvania*, 456 F. App'x 72, 73 (3d

Cir. 2012) (*per curiam*) (summarily affirming dismissal where plaintiff made "no attempt ... to

explain how Pennsylvania's specific procedures for postconviction [] testing are inadequate as a

matter of federal law" (footnote omitted)); *Hanson v. Lehigh Cnty. Dist. Attorney's Off.*, No. 21-

3368, 2021 WL 3910741, at \*7 (E.D. Pa. Sept. 1, 2021), *appeal dismissed sub nom. Hanson v.

Lehigh Cnty. Dist. Att'y*, No. 21-2763, 2021 WL 7544182 (3d Cir. Nov. 10, 2021).

   Finally, to the extent Mr. Turner relies on the First Amendment, that claim is also not

plausible.  In order to state a First Amendment claim for denial of access to courts, a prisoner "is

required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F.

---

[5]  Moreover, the test results and property receipt sought by Mr. Turner were introduced
into evidence at his 2003 criminal trial as "C8" and "D6;" Mr. Turner's own counsel introduced
the Property Receipt and cross-examined Forensic Expert McCoy after stipulating to his
qualifications. (*See Turner v. Barone*, Civ. No. 09-0955, Habeas Resp., ECF No. 24-2 at 67, 70,
72, 81, 84, 88, 91, 96.)

App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.*; *see also Walker v. Little*, No. 20-4460, 2022 WL 580641, at *7 (E.D. Pa. Feb. 24, 2022).

Mr. Turner has failed to identify any non-frivolous legal action he was unable to pursue as a result of Defendant's alleged actions. Here, in the context of this case, in which the public record establishes Mr. Turner's guilt based on a variety of factors, including eyewitness identification of Ms. Poteat and Ms. Pittman, it is not clear what value the gunshot residue evidence holds at all in relation to Mr. Turner. The black gloves at issue were recovered from Mr. Haire, Mr. Turner's co-defendant and the individual identified by eyewitness testimony as shooting Mr. Haire. Mr. Turner was identified as the accomplice who struck Ms. Poteat in the back with his casted arm after snatching her belongings. In other words, even if testing supported Mr. Turner's version of events, *i.e.*, that the gunshot testing was flawed, other evidence presented at trial persuasively established Mr. Turner's conduct and formed the basis of his conviction. Because Mr. Turner has not identified an underlying cause of action in which he lost a nonfrivolous and arguable claim sufficient to demonstrate actual injury, his First Amendment access to courts claim is not plausible and will be dismissed pursuant to § 1915A(b)(1).

11

IV.     **CONCLUSION**

For the foregoing reasons, the Court will dismiss Mr. Turner's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1) as to all Defendants.  All claims related to Mr. Turner's claim of failure to turn over exculpatory evidence are dismissed without prejudice as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Mr. Turner may reassert his *Heck* barred claims only in the event his underlying sentence is reversed, vacated, or otherwise invalidated. All remaining claims are dismissed with prejudice.  An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER, J.